UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA O. VILLEGAS,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　　Defendant. | Case No. ED CV-12-1354-SP<br><br><br>MEMORANDUM OPINION AND<br>ORDER |

**I.**

**INTRODUCTION**

　　On August 23, 2012, plaintiff Jessica O. Villegas filed a complaint against defendant Carolyn W. Colvin, seeking a review of a denial of Supplemental Security Income benefits ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

　　Plaintiff presents two disputed issues for decision: (1) whether the

1

Administrative Law Judge ("ALJ") properly determined, at step five, that plaintiff could perform other work; and (2) whether the ALJ properly discounted plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 7-26.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred in discounting plaintiff's credibility. The court also concludes that the ALJ erred in part at step five, but need not decide if that error was harmless in light of the ALJ's other error. Accordingly, the ALJ's decision should be reversed and this matter remanded for further proceedings.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 47 years old on the date of her August 31, 2010 administrative hearing, has an eighth grade education. AR at 34, 41, 122. Her past relevant work includes employment as a hotel housekeeper. *Id.* at 37.

On December 17, 2008, plaintiff protectively filed an application for SSI, alleging an onset date of August 20, 2008 due to fibromyalgia and arthritis in her right hand. *Id.* at 122, 156, 160. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 64-67, 68, 71-75, 77.

On August 31, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 34-56. The ALJ also heard testimony from Sandra Fioretti, a vocational expert ("VE"). *Id.* at 57-60.

On October 22, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 21-30. Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since December 17, 2008. *Id.* at 26.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: colelithiasis, obesity, diabetes status post uterine sarcoma, and cholecystectomy. *Id.*

At step three, the ALJ found that plaintiff's impairment did not meet or medically equal one of the listed impairments set forth in the Listings. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform sedentary work with the following limitations: plaintiff could sit for 30 minutes at a time, and stand and stretch for a minute or so, for 6 or 7 hours of an eight-hour workday; be on her feet only up to 2 hours of an 8-hour workday, and for only 10 minutes at a time; and perform no fast paced work such as rapid assembly lines. *Id.* Additionally, the ALJ limited plaintiff's work to simple, repetitive tasks due to side effects from pain medication, and noted that plaintiff may miss work up to twice a month. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a housekeeper. *Id.* at 28.

At step five, the ALJ determined that based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform other jobs "that exist in significant numbers in the national economy," including assembler of buttons and notions, and food and beverage clerk. *Id.* at 28-29. Consequently, the ALJ determined that plaintiff was not disabled. *Id.* at 29.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

### A. The ALJ Failed to Properly Consider Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly consider plaintiff's credibility. P. Mem. at 16-26. Specifically, plaintiff argues that the ALJ did not provide "a single legally sufficient reason to reject the testimony of Jessica Villegas." *Id.* at 18. The court agrees.

The Commissioner must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, the Commissioner engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the Commissioner must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The Commissioner may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course

of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 27. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ directly addressed plaintiff's credibility in a single sentence, discounting it thusly: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." *Id.* at 4. This is not a clear and convincing reason supported by substantial evidence. *See Guardado v. Astrue*, No. 1:09–cv–01450–SMS, 2011 WL 2144210, at *14 (E.D. Cal. May 31, 2011) ("This boilerplate language, used in nearly every hearing decision rejecting a claimant's request for benefits, falls far short of the standard required to reject a claimant's testimony as lacking credibility.").

Although the ALJ summarized portions of the medical evidence, he did not apply any of that medical evidence to an analysis of plaintiff's credibility. AR at 27-28. As plaintiff correctly notes, the ALJ simply provided a legally insufficient "unelaborated recitation of the data in the record" (P. Mem. at 19), thereby failing to "make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also* Social Security Ruling ("SSR") 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual

and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[2]

The ALJ also observed: plaintiff "was considered an excellent candidate for lap band surgery"; plaintiff "decline[d] to state whether or not she smokes cigarettes or drinks alcoholic beverages"; and plaintiff "does the cooking, cleaning, shopping, and driving" and "walk[s] on a regular basis for exercise." AR at 27-28. It is possible that, as defendant argues, the ALJ made the observations because he found them relevant to the issue of plaintiff's credibility; however, the ALJ does not say this, nor does he offer any hint of how such observations might relate to plaintiff's credibility. Because the ALJ did not actually articulate any bases for discounting plaintiff's credibility, this court has no basis to conclude that the ALJ did not arbitrarily do so. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ . . . and may not affirm the ALJ on a ground upon which he did not rely."). The ALJ thus erred in discrediting plaintiff's testimony.

**B.     The ALJ Erred at Step Five**

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence

---

[2]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.912(f).

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing SSR 00–4p). But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19. In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Plaintiff contends that the ALJ erred at step five when he concluded that she could perform other work, including assembler of buttons and miscellaneous notions, and food and beverage order clerk. P. Mem. at 8. Plaintiff argues that her RFC conflicts with the jobs as described in the DOT. *Id.*

### 1. Assembler, Buttons and Notions

Plaintiff argues that with an RFC that precludes her from "fast paced work like rapid assembly lines (AR 26)," she cannot perform the job of assembler of buttons and notions because it "requires the ability to work in a fast paced environment doing assembly line work." P. Mem. at 8. The court disagrees.

The DOT job description does not describe the pace of the work ordinarily involved in the assembler job. *See* 734.687-018; 1991 WL 679950 (G.P.O.). Because plaintiff's RFC does not preclude all assembly-line type work, only "fast paced work like *rapid* assembly lines (AR 26 (emphasis added))," the vocational expert's testimony and the DOT assembler job description do not necessarily conflict. In response to the ALJ's hypothetical, which included the above-mentioned prohibition, the VE testified that plaintiff could perform "some forms of production work such as assembly." AR at 57. The VE also explained that she had eroded the number of assembler jobs by 25% based upon the fact that some of the assembler jobs might not be available to plaintiff. The VE explained: "The erosion is for those jobs that it would be difficult to have the position change . . . whether it was standing or walking, but those limitations primarily." AR at 58. The VE also said that her testimony was consistent with the DOT. AR 58. Therefore, that testimony constitutes substantial evidence supporting the ALJ's finding that plaintiff can perform the assembler, buttons and notions work.

### 2. Food and Beverage Order Clerk

Plaintiff suggests the reasoning component of the General Education Development ("GED") requirements for the position of food and beverage order clerk, Dot. No. 209.567-014, exceeds her intellectual capacity. *Id.* at 9. The job of food and beverage order clerk requires reasoning level three, which, she contends,

is incompatible with the limitation in her RFC to "simple, repetitive tasks."[3] P. Mem. at 9; AR at 26.

The government asserts that no bright-line rule forbids an individual capable of unskilled work from doing jobs with reasoning level 3. D. Mem. at 5. The Ninth Circuit has not directly addressed this question and a circuit split exists as to "whether a limitation to simple, repetitive tasks is compatible with the performance of jobs with a level three reasoning as defined in the DOT." *Signavong v. Astrue*, No. ED CV 10-917-MAN, 2011 WL 5075609, at *7 (citing *Adams v. Astrue*, 2011 WL 1833015 (N.D. Cal. May 13, 2011) (comparing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (a surveillance systems monitor job with a DOT reasoning level of three was not suitable for a claimant whose RFC limited her to "simple and routine work tasks"), with *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (a claimant limited to "simple" work could perform the job of surveillance systems monitor, which had a reasoning level of three), and *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (a claimant with an inability to do "complex technical work" was not precluded from jobs with a reasoning level of three))).

Despite the lack of a bright-line prohibition, however, a number of courts in this Circuit have found that a limitation to simple, repetitive tasks is inconsistent with a reasoning level of three. *Cardona v. Colvin*, No. ED CV 12-0895-CW, 2013 WL 2285354, at *4 (C.D. Cal. May 22, 2013) (citing *Torrez v. Astrue*, 2010 WL 2555847 (E.D. Cal. June 21, 2010) (noting that several district court cases in the Ninth Circuit question whether a claimant limited to simple, repetitive tasks

---

[3] Reasoning level three requires an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." (*See* DICOT 209.567-014, 1991 WL 671794 (G.P.O.))

can perform jobs requiring level three reasoning); *McGensy v. Astrue*, 2010 WL 1875810, at *3 (C.D. Cal. May 11, 2010) (finding a limitation to 'simple, repetitive tasks' "inconsistent" with the requirements for level three reasoning, in particular the job of mail clerk) (citations omitted)); *see also Bagshaw v. Astrue*, 2010 WL 256544, at *5 (C.D. Cal. Jan. 20, 2010) (concluding that a mail clerk job, which requires level three reasoning under the DOT, was "inconsistent with [plaintiff's] intellectual functional capacity limitation to simple, routine work.") (citation omitted).

      The court concludes, given the above authority, that there is at least a possibility that the DOT precludes a person restricted to simple, repetitive tasks from performing work – such as that of food and beverage order clerk – that requires level three reasoning. As a result, the ALJ could not rely on the VE's opinion without seeking an explanation of the apparent inconsistency between her opinion and the standards contained in the DOT. Review of the transcript reveals that the ALJ asked the VE if her opinion was consistent with the DOT, and the VE replied: "Yes." AR at 58. The ALJ does appear, therefore, to have discharged his initial obligation to inquire whether the VE's testimony conflicted with the DOT. *See Massachi*, 486 F.3d at 1152. That was not, however, the end of the ALJ's obligations.

      The Ninth Circuit has cited to SSR 00-4p as "explicitly requiring that the ALJ determine whether the expert's testimony deviates from the *Dictionary of Occupational Titles* and whether there is a reasonable explanation for any deviation." *Massachi*, 486 F.3d at 1153. SSR 00-4p provides:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a

11

> determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p. Although the VE's testimony in this case deviated from the DOT, the ALJ did not obtain an explanation for this deviation or even identify it. Instead, the ALJ erroneously found: "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR at 29. To properly make such a finding, the ALJ was required to obtain "persuasive evidence to support the deviation" between the VE's testimony and the DOT. *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001). The record here is utterly devoid of such evidence, or of any explanation by the ALJ of how he resolved the conflict. *See* AR at 23, 43-46. He plainly did not resolve it. The record in this case consequently lacks substantial evidence to support the ALJ's reliance on the VE's testimony.

Even where a VE wrongly testifies that there is no conflict, where "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, No. CV 10-3142-AJW, 2011 WL 223595, at *2-5 (C.D. Cal. 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, No. CV 09-6971-SH, 2010 WL 1752162, at *3

(C.D. Cal. April 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

Here, defendant contends that no conflict exists between the VE's testimony and the DOT. D. Mem. at 6. This court finds, however, that at least an apparent conflict existed here. As noted above, the weight of authority in this Circuit has noted that reasoning level three is incompatible with a limitation to simple, repetitive tasks. *See, e.g., Cardona*, 2013 WL 2285354, at *4.

Accordingly, the ALJ erred at step five in failing to obtain an explanation for and resolve the VE's deviation from the DOT before the ALJ relied on the VE's testimony in finding plaintiff not disabled. Because the ALJ erred in finding plaintiff can perform the food and beverage order clerk job, plaintiff would be left only with the occupation of assembler, buttons and notions, which, after the VE's 25% erosion, encompasses 850 jobs in the regional and 11,000 nationally. AR at 29, 58. These numbers may not satisfy the ALJ's "burden of establishing that there are jobs, existing in significant numbers in the national economy, that the claimant can perform." *Cardona*, 2013 WL 2285354, at *5 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983)). Although the Ninth Circuit has not established a bright-line rule for what constitutes a "significant" number of jobs, that court has held that 1,000 or more locally- or regionally-available jobs is a "significant number." *Id.* The ALJ, however, did not have the opportunity to determine whether the job of assembler, buttons and notions, taken alone, is "work which exists in significant numbers" for purposes of the Social Security Act. *See Cardona*, 2013 WL 2285354, at *5.

13

But the court need not decide whether the ALJ's error in failing to resolve the apparent conflict between the DOT and the VE's testimony that plaintiff could work as a food and beverage order clerk was harmless. Because the ALJ also erred in discounting plaintiff's credibility, the court simply recognizes the step five error here as another matter to remedy on remand, to the extent still applicable after the ALJ reconsiders plaintiff's credibility.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in discounting plaintiff's credibility. The ALJ also erred in failing to properly conduct the step five analysis. On remand, the ALJ shall first reconsider plaintiff's subjective complaints, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five

14

to determine what work, if any, plaintiff is capable of performing.  If the ALJ finds plaintiff capable of other work at step five, he shall obtain an explanation from the VE as to whether any job the VE presents is incompatible with plaintiff's RFC and resolve any apparent conflicts with the DOT.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: August 14, 2013

SHERI PYM
United States Magistrate Judge